## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| Alek Kavcic and The Alek Kavcic Foundation, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No: 6:22-cv-190 |
| | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Informer, Srpski Telegraf Republika, Blic, and | ) | |
| Nedeljnik, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Alek Kavcic ("Kavcic") and The Alek Kavcic Foundation (the "Alek Kavcic Foundation") file this Original Complaint for defamation against Defendants Informer, Srpski Telegraf Republika, Blic, and Nedeljnik ("Defendants") alleging, based on their own knowledge as to themselves and their own actions, and based on information and belief as to all other matters, as follows.

## INTRODUCTION

1.      This is a civil action for defamation.

2.      Alek Kavcic was born in Serbia.  He is a distinguished professor, an electrical engineer, a scientist, and a philanthropist.  He is currently an adjunct professor of Electrical Engineering at Carnegie Mellon University ("Carnegie Mellon").  He previously held teaching positions at Harvard University and the University of Hawaii.  Kavcic is one of the foremost experts on signal processing and magnetics and is the named inventor on numerous U.S. patents concerning ground-breaking disk drive technology.  Kavcic's patented technology is used in

billions of computers around the world.  As an adjunct professor at Carnegie Mellon, Kavcic assigned some of his patents to Carnegie Mellon.

3.      In 2012, Carnegie Mellon prevailed in a patent infringement lawsuit against Marvell Technology Group ("Marvell") in the United States District Court for the Western District of Pennsylvania.  In that lawsuit, Carnegie Mellon asserted a patent on which Kavcic was the named inventor, alleging that Marvell was using Kavcic's patented technology in its disk drive products.  The jury found that Marvell should pay Carnegie Mellon $1.17 billion in damages.  The court enhanced the damages to $1.54 billion after it found that Marvell's infringement was willful.  The litigation received substantial attention in the press.

4.      In 2016, Carnegie Mellon and Marvell settled their disputes, including all appeals, for $750 million.  The settlement was publicly disclosed by Marvell, and widely reported in the press.  Pursuant to the rules established by the University, named inventors receive 50% of any recovery from the assertion of patents by the University.

5.      Kavcic believes that education is a fundamental human right. Accordingly, in 2017, Kavcic turned to philanthropy and founded the Alek Kavcic Foundation.  The Alek Kavcic Foundation promotes science and education among school children in the United States and abroad.  The Alek Kavcic Foundation brings science to the classroom and helps students in the United States access education through programs and materials.  For example, the Kavcic Foundation is the sponsor of two scholarships at St. Stephen's Episcopal School in Austin, Texas. To date, Kavcic and the Alek Kavcic Foundation have donated approximately $12.5 million to U.S. academic institutions.

6.      Kavcic is a resident of Austin, Texas.  The Alek Kavcic Foundation has its principal place of business in Austin as well.

7.      The Alek Kavcic Foundation created and provides monetary funding for a separate foundation in Belgrade, Serbia that helps Serbian school children access education and educational materials.

8.      Unlike in the United States, Serbian public school children are required to purchase their own school textbooks, often at significant expense.  Some families cannot afford these books, or they are purchased against the backdrop of significant financial hardship.  To help these students and their families, the Alek Kavcic Foundation has purchased textbooks from Serbian textbook publishers and donated them to schools for use by public school children.  It has also purchased and donated computers to Serbian public schools. The Alek Kavcic Foundation also invests in writing its own textbooks and offers them for downloading free of charge on the internet, on the website www.besplatnabiblioteka.com.  So far, the Alek Kavcic Foundation has spent approximately $1 million on the textbook project in Serbia.

9.      The Alek Kavcic Foundation's philanthropy has angered the Serbian textbook "cartel," a group of publishers that controls a significant share of the textbook market in Serbia. The Alek Kavcic Foundation's generosity poses a threat to the publishers' business model, which generates significant revenue from Serbian school children and their families through high-priced textbooks.

10.     On information and belief, in an effort to undermine the good deeds of the Alek Kavcic Foundation, certain Serbian textbook publishers paid Defendants to publish knowingly false and misleading stories in their tabloid newspapers.  These stories falsely claim that Plaintiffs have unlawfully and misleadingly gifted free textbooks to school children in attempt to gain political power in Serbia, thus deceiving the public with their charitable acts. In reality, the Plaintiffs have engaged in buying large quantities of textbooks at full retail price pursuant to a

lawful contract with the publisher, and donating them to schools. Plaintiffs have a desire to make education more affordable for school children and their parents.

11.     By labeling Alek Kavcic and the Alek Kavcic Foundation as greedy and politically motivated, the Defendants have caused great harm to the Foundation and Alek Kavcic. The Serbian public, especially the Serbian and the Ex-Yugoslavian community residing in the United States where the Foundation operates, perceives Serbian businessmen and politicians as corrupt, evil, greedy and selfish, dedicated to stealing the public's money, and getting rich while in power. Therefore, Kavcic and the Alek Kavcic Foundation have been demonized in the eyes of the readers who have read the defamatory content.

12.     The Serbian tabloid newspapers are circulated in the United States, including in Texas.

13.     The false and misleading statements have harmed the reputation of Kavcic and the Alek Kavcic Foundation.

**THE PARTIES**

14.     Kavcic is an individual who resides at 16004 Chateau Avenue, Austin, Texas 78734.

15.     The Alek Kavcic Foundation is a non-profit organization organized under the laws of the state of Texas, and having its principal place of business located at 16004 Chateau Avenue, Austin, Texas 78734.

16.     Defendant Informer is a newspaper publisher located in Serbia having its principal place of business located at Insajder tim d.o.o., Terazije 5/7, 11000 Belgrade, Serbia.

17. Defendant Srpski Telegraf Republika is a newspaper publisher located in Serbia having its principal place of business located at Medijska Mreza d.o.o., Beograd-Stari Grad, Trg Nikole Pasica 7/II, 11000 Belgrade, Serbia.

18. Defendant Blic is a newspaper publisher located in Serbia having its principal place of business located at Ringier Axel Springer d.o.o Beograd, Kosovska 10, 11000 Belgrade, Serbia.

19. Defendant Nedeljnik is a newspaper publisher located in Serbia having its principal place of business located at NIP Nedeljnik d.o.o., Bulevar Kralja Aleksandra 43, 11000 Belgrade, Serbia.

## JURISDICTION AND VENUE

20. This Court has diversity jurisdiction of this suit pursuant to subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens of the State of Texas and Defendants are citizens of Serbia and thus there is complete diversity, and Plaintiffs seek damages in excess of $75,000.

21. "Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Intercarga, S.A. v. Fritz Companies, Inc.*, No. 14-02-00297-CV, 2003 WL 21402583, at *3 (Tex. App. June 19, 2003).

22. This Court has personal jurisdiction over Defendants because they have transacted business in Texas and the Western District of Texas Judicial District, they have defamed Plaintiffs who are residents of this District, directed their defamatory content at Texas residents, and Texas residents are able to download and read defamatory content in Texas, as well as order

printed publications of the defamatory content which is distributed within the United States by a company called Imtex Press, Inc., which all the Defendants regularly use to get their newspapers circulated within the United States.

23. In deciding whether personal jurisdiction over nonresident defendants is constitutional the courts have used the *Calder* test considering the location of the focal point, target audience, and main harm caused. *See Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. Tex. 2002).

24. Defendants were aware that Plaintiffs are residents of Texas and that harm will be felt primarily in Texas. Defendants were also well aware that Kavcic is a professor in the United States.

25. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### *Informer* Publishes False and Defamatory Statements in at Least Six Articles

26. On or about March 8, 2021 March 13, 2021, March 16, 2021, March 19, 2021, March 30, 2021, and November 24, 2021, Defendant *Informer* published defamatory articles in its tabloid newspaper, stating that the Plaintiffs are deceiving parents and school children by gifting textbooks that are not truly free and are of lesser value than the textbooks the parents should be purchasing instead. *Informer* also published false statements, claiming that the Plaintiffs breached their contract with Zavod za Udzbenike (translated herein as the "Institute for Textbooks"), the publisher that sold textbooks to the Plaintiffs.

27. The articles are about Plaintiffs, referred to Plaintiffs by name throughout, and were so understood by those who read the tabloid.

28.     These statements caused harm to Plaintiffs and are published with the intent of defaming the Plaintiffs and keeping the textbook publishers cartel in business. Specifically, *Informer* published the following false statements, which injured the Plaintiffs' reputation.

29.     On March 8, 2021, *Informer* published an article titled "Textbook 'Mathematics' Withdrawn from Disputed Site; Theft of Lawsuit Remains." *See Exhibit 1.*[1] The article stated:

    a.      "The elementary school, seventh grade math textbook, the authors of which are professors Miloljub Albijanic, Djordje Dugosija and Marko Segrt, was withdrawn from the website of the Aleksandar Kavcic Foundation where, so the authors claim, it was uploaded for free use without their authorization." *Id.*

    b.      "This happened following the Informer's reporting on Albijanic's decision to sue the businessman Aleksandar Kavcic for stealing the entire contents of the elementary-school, seventh-grade math textbook since one of his books was uploaded on the internet without his approval." *Id.*

    c.      The article portrayed a photograph of a letter from a lawyer at Finnegan Henderson Farabow Garrett & Dunner LLP to a lawyer at Pillsbury Winthrop Shaw Pittman LLP with a caption "Facsimile of the lawsuit against Kavcic." *Id*.

    d.      The letter was not a facsimile of a lawsuit against Kavcic, but rather correspondence between Mr. Albijanic's lawyer and Mr. Kavcic's lawyer.

---

[1]  The articles referenced herein were originally published in the Serbian language. English translations precede each Serbian language article in each referenced Exhibit. A certificate of translation is attached as *Exhibit 17*.

Contrary to what is stated in the article, no lawsuit has ever been filed by Albijanic against Kavcic in the United States.

30.     On March 13, 2021, *Informer* published an article titled "Owner of the Alek Kavcic Foundation Violates Contract With State Institution! Kavcic defrauds the Public Institute for Textbooks." *See Exhibit 2*. The article falsely stated:

a.      "Businessman Aleksandar Kavcic defrauds the Public Institute for Textbooks, with which he signed a business cooperation contract! Namely, on the website of his foundation, Kavcic enabled the download and duplications of the Institute's textbooks in high resolution, thus violating the contract terms." *Id.*

b.      "More precisely, from the website Besplatna biblioteka, founded by the Foundation, anyone can download and print the offered textbooks of the Institute, although the contract clearly states that the PDF format of the textbook on the website must be in such resolution as to prevent reproduction." *Id.*

c.      "'By allowing a high-resolution textbook on his website, Kavcic violated the contract signed with the Institute,' says Albijanic." *Id.*

d.      "To make matters worse, Kavcic, who is the president of the club for education of the citizens' group 'Enough is Enough,' says on the Foundation's website that by May 2021 it will start printing textbooks at a price of two dinars per page, although the Contract clearly states that distribution and download are strictly prohibited." *Id.*

31.     On March 16, 2021, *Informer* published another article titled "Professor Miloljub Albijanic accuses Alek Kavcic: The Institute for Textbooks is going to ruin!" *See Exhibit 3*. The article falsely stated:

   a.     "When appearing on the show Utisak nedelje, Alexandar Kavcic misled the public and for the umpteeth hurt us, the authors! He again urged people to download and print textbooks, which is a direct breach of a contract he signed with the Institute for Textbooks." *Id.*

   b.     "However, as Informer has already written, Kavcic caused damage to a number of authors and violated the contract he signed with the Institute for Textbooks when he enabled the download and reproduction of school textbooks in high resolution from the website of his foundation." *Id.*

   c.     "'It is typical of his careless manner. He also violated numerous articles of the Copyright and Related Rights Act. He knowingly abused the copyrights. Worse of all is that he does it to collect cheap political points … In this case, obvious fraud is at stake! He promotes free textbooks, but based on what he says, one can only conclude that they are not free at all,' says Albijanic." *Id.*

   d.     "Knezevic Orlic: Law breached! The show Utisak nedelje also featured the Head of the publishing house Klet, Gordana Knezevic Orlic. She said that the Alek Kavcic Foundation broke the law." *Id*.

   e.     "We will pursue further our court case, regardless of the fact that the textbook has been removed from the website. Pretrial proceedings have been launched in America, while domestic courts launched a provisional

measure on March 2, ordering the textbook to be taken off the website. He did do so fearing the further development of the situation, our interlocutor believes." *Id.*

  f.  "'As he said, Kavcic paid these authors in advance. But he didn't pay us! However, one should bear in mind that the textbooks he keeps talking about actually do not exist at all. They have been approved, but the question is whether any teachers in schools use them at all,' Albijanic says." *Id.*

32. On March 19, 2021, *Informer* published an article with more false statements about Kavcic titled "Aleksandar Kavcic Deceives Students and Parents! Free Textbooks Now on Affordable Sale?!" *See Exhibit 4.* The article stated:

  a.  "The promises of free textbooks that Aleksandar Kavcic has been advertising through his Alek Kavcic Foundation for months turn out to be empty." *Id.*

  b.  "As he said, Kavcic paid in advance to those authors. But, he didn't pay us! These are non-existent textbooks. They have been approved, but the question is whether any of the teachers in schools use them at all, notes Albijanic." *Id.*

33. On March 30, 2021, *Informer* published another article, with even more false statements titled "Kavcic—From Textbook Scams to Politics." *See Exhibit 5.* The article stated:

  a.  "There is no doubt that political motives lie behind the businessman Aleksandar Kavcic's plan to provide so-called free textbooks, believes Milica Djurdjevic Stamenkovski from Zavetnik." *Id.*

b.      "His sole aim is to gain the greatest possible support of the people because he thinks it will benefit him when running for office. I believe that's his ultimate goal. It is perfectly clear that he wants to be part of the political scene in Serbia and supports the politics of Sasa Radulovic. That is why he was in the parliamentary elections and was seventh on the list of sovereignists. How can he then claim that he is not politically driven?" *Id.*

c.      "Whether he will run for president, form his own party, or be part of Sasa Radulovic's list or someone else's remains to be seen. Everything he does and the way he tries to present himself in public resembles preparing the ground for an election campaign. His 'free textbooks' program is nothing more than an attempt to amass cheap political points. The only problem is that our people now understand what sort of shady business this is and that these textbooks are anything but free, says Dudevic Stamenkovski." *Id.*

d.      According to unconfirmed sources, Kavcic postponed the textbook donation until September when the campaign for presidential and parliamentary elections will begin! Apparently, fearing that the people would forget about his 'great work' by the campaign, he formulated a plan to distribute the books to elementary students only at the very beginning of the school year and thus gain media space." *Id.*

34.    On November 24, 2021, *Informer* published yet another article with more false statements titled "Avoiding Trial: Alexander Kavcic Set on Deceiving Judges As Well." *See Exhibit 6*. The article stated:

a. "The promises of free textbooks that Aleksandar Kavcic has been advertising for months through his Alek Kavcic Foundation turned out to be empty. Textbooks for elementary school students can be ordered on their website, but not for free, rather at a price of two dinars per page. Additionally, the Foundation and the Institute for Textbooks signed a contract whereby the Foundation is allowed to publish certain textbooks in PDF format on the website besplatnabiblioteka.com, where parents and students can download them. The problem arose when it came out that no one had asked the authors of the textbooks for permission." *Id*.

### *Srpski Telegraf Republika* Publishes
### False and Defamatory Statements in at Least Three Articles

35.     On or about February 25, 2021, March 17, 2021, and March 18, 2021, Defendant *Srpski Telegraf Republika* ("Republika") published defamatory articles in its tabloid stating that the Plaintiffs are deceiving parents and school children by gifting textbooks that aren't truly free and are of lesser value than the textbooks the parents should be purchasing instead.

36.     *Republika* also published false statements that the Plaintiffs breached their contract with the Institute that sold the textbooks to the Plaintiffs. Perhaps the most outrageous published statements claimed that Kavcic paid 10 million euros to Carnegie Mellon in order to secure his professorship. This is blatantly false and extremely degrading and hurtful to Kavcic's and the Alek Kavcic Foundation's reputation.

37.     The *Republika* articles are about Plaintiffs, referred to Plaintiffs by name throughout, and were so understood by those who read the tabloid.

38.     The false statements are extremely harmful to Plaintiffs and were published with the intent of defaming the Plaintiffs and keeping the textbook publishers cartel in business.

Specifically, the following statements have been published in the articles that are false and that injured the Plaintiffs' reputation.

39.     On February 25, 2021, *Republika* published an article titled "New on Aleksandar Kavcic: Students did not like him, and he had to give 10 million euros to become a professor!" *See Exhibit 7.* The article falsely stated:

a.      "Fake in everything he does. Aleksandar Kavcic, a man who recently approached the Serbian people claiming to be a humanitarian, which is just a big, fat lie, and sharing 'free' textbooks which are not actually free but expensive, cannot even boast of a teaching career." *Id*.

b.      "According to information coming from America, all of Kavcic's stories about his flamboyant academic career are just plain boasting. He told these stories order to deceive the Serbian public and more easily push through the project of the supposedly free textbooks, behind which, in fact, is a well-designed plan for a huge material gain." *Id*.

c.      "At Harvard, he only held random lectures, but here he was also rated negatively by the official commission. Therefore, the title of professor at the Harvard University was never received. After that, for a short period of time he taught in Hong Kong, and somewhat later at the University of Hawaii, which was ranked 170th in the world, someone took pity on him and got him a professorship. What requires special attention in the whole story is the fact that Kavcic received the title of full-time professor at Mellon University only after a multi-million euro donation (over 10

million). What's worse is that the same university eventually sued him, for which there is an official document as evidence. *Id*.

d.    "Let us also remember that Aleksandar Kavcic won against Marvell company in court and obtained damages in the amount of 750 million dollars. The donations made to the Mellon University were primarily owing to that money. This, in all truth, the sole reason he was awarded the title of professor." *Id.*

40.    On March 17, 2021 *Republika* published a second article with more false statements titled "Contract with the Institute For Textbooks Violated: Few books found on the Foundation's website offering free textbooks!" *See Exhibit 8*. The article stated:

a.    "Professor Aleksandar Kavcic violated the contract he signed with the Institute for Textbooks. Although the idea of free textbooks for primary school students sounded very good, the parents, however, remain let down, so it seems that the saying 'don't be fooled by empty promises' is appropriate in this case." *Id.*

b.    "Since Professor Kavcic ignored the contract with the Institute, parents and students looking forward to free textbooks will be disappointed because they will be able to download little from the website Besplatnabiblioteka.com." *Id.*

c.    "Although Professor Kavcic announces that 60% of the required textbooks have already been published and are available for use, the truth is slightly different. Judging by the number of PDF versions of textbooks on the

Foundation's website, day by day they are fewer and fewer of them available. All in all, free textbooks remain an empty promise." *Id*.

    d.    "After numerous doubts and discrepancies between what Professor Kavcic has been promising for months and what is actually available on the website, a logical question arises: will users who are disabled from first seeing what they want to buy in fact be buying a pig in a poke?" *Id.*

41.    The next day, on March 18, 2021, *Republika* printed a third article titled: "Undeniable Proof About Professor Kavcic Comes Out: Offering books that no school will use!," with even more false statements. *See Exhibit 9.* It contained the following:

    a.    "Undeniable proof comes out that Professor Kavcic and his foundation have been deceiving children and parents." *Id.*

    b.    "The publishing company Nova skola, whose 'free' textbooks are offered by Kavcic and his foundation, was founded back in 1989, but no school in Serbia trusts this company so no one uses their textbooks." *Id.*

    c.    "Finally, to sum it all up, Kavcic has been selling a bill of goods to both children and parents who actually believed him." *Id.*

    d.    "All this is further evidence that Professor Aleksandar Kavcic, president of the Education Club, and candidate for deputies of the list of sovereigntists, led by Sasa Radulovic, uses this whole story about 'free' textbooks, whose printing is charged for at two dinars per page, for political reasons solely to collect cheap political points." *Id.*

### *Blic* Publishes False and Defamatory Statements in at Least Five Articles

42.    On or about April 21, 2021, April 23, 2021, April 26, 2021, May 27, 2021, and December 1, 2021, Defendant *Blic*, Ringier Group AG published defamatory articles in its

newspaper stating that Plaintiffs are deceiving parents and school children by gifting textbooks that are not truly free and are of lesser value than the textbooks the parents should be purchasing instead, and that the Kavcic Foundation breached its contract with the Institute for Textbooks. The defamatory statements directly state or imply that Kavcic has tricked the public and engaged in having his Foundation gift textbooks in order to manipulate school children and improve his political standing in Serbia. Also, the articles falsely imply that the Kavcic Foundation is not paying taxes (referred to as "VAT"), and accuse the Plaintiffs of breaking the law.

43.     The articles referred to Plaintiffs by name throughout, and were so understood by those who read the tabloid.

44.     The entire statements are extremely harmful as to Plaintiffs, and were published with the intent of defaming the Plaintiffs and keeping the textbook publishers cartel in business. Specifically, the following statements that have been published in the articles are false and injured the Plaintiffs' reputation.

45.     On April 21, 2021, *Blic* published an article titled "Professors Sue Kavcic for Copyright Infringement." *See Exhibit 10.* It contained the following false statements:

      a.     "If Kavcic did have the intention of donating these books, why not address the Public Institute for Textbooks as the true donor—buy the books and hand them out to students? Instead, he uploaded the PDF on the website, without any rights whatsoever, and distributed them either free of charge or for two dinars per page. It only takes one person to download this PDF book and distribute it further in thousands or hundreds of thousands of copies, Albijanic pointed out." *Id.*

b. "If only they had asked for our approval, it would have gone down like spoonful of sugar. One cannot but wonder—what was the motive? Obviously, the motive was a political nature, aimed at presenting Kavcic as a benefactor both to the students and their parents by apparently distributing textbooks for free. Future political candidacy is most probably the motive. That is why this is one of the most unscrupulous infringements of copyrights, concludes Albijanic." *Id.*

46. On April 23, 2021, *Blic* published a second article titled "How Can a Foundation Sell Textbooks?" *See Exhibit 11*. It contained the following false statements:

a. "Whether a foundation is legally allowed to sell printed textbooks and whether all publishers can become foundations and sell books without VAT are all issues that have popped up in relation to the work of the Alek Kavcic Foundation in the past few months." *Id*.

b. "Many publishers are wondering what sort of foundation it is, as it sells allegedly free textbooks without VAT and what sort of benefactor advertises that much? Rumor has it that the Alek Kavcic Foundation spent several hundred thousand Euros on the marketing campaign alone. How does Alek Kavcic Foundation generate its income, and why doesn't it spend the money on purchasing of textbooks and simply distribute them to children? According to the comments of some, all this smells of a political promotion …" *Id.*

c. "Lawyer Dusan Mijatovic who, on behalf of a publishing house sued the Alek Kavcic Foundation for unfair competition, points out that the

foundation is misleading within the meaning of Article 11 of the Law on Advertising." *Id.*

d.    "The foundation offers textbooks for free, but in truth they are not free. First, downloading a textbook in PDF is not a textbook, since it cannot be used in schools. Then the payment for the textbooks at the price of printing is not free; it already has its own price, regardless the quality of such textbooks. This means that the foundation used the word 'free' as bait to then sell the textbooks at a certain price and thus gain the trust of buyers, points out Mijatovic for Blic." *Id.*

47.    On April 26, 2021, *Blic* published a third article titled "Is Kavcic Headed to Politics? The work of foundation seeking free textbooks followed by a string of controversies." *See Exhibit 12.* It falsely stated the following:

a.    "How does the Alek Kavcic foundation generate its income, and why doesn't it spend the money by purchasing textbooks and simply distributing them to children? So finally, it turns out that this is a political story …" *Id.*

b.    "If Kavcic did have the intention of donating those books, why not address the Public Institute for Textbook as the true donor—buy the books and hand them out to students? Obviously, the motive is of a political nature, aimed at presenting Kavcic as the benefactor both to students and their parents by apparently distributing textbooks for free. Future political candidacy is most probably the motive. That is why this is one of the most unscrupulous infringements of copyrights, concludes Albijanic." *Id.*

48.     On May 27, 2021, *Blic* published a fourth article titled "A PDF is Not and Cannot Be a Textbook: European experts on the proposal of the Kavcic Foundation and the meddling of politics." *See Exhibit 13.*  It made the following false statements:

    a.     "Whether a text in PDF format is a textbook is a question that has been current for months, ever since the Alek Kavcic Foundation bought the rights to certain textbooks and posted them on its website in PDF format so that everyone, so they say, could use or print them at a price of two dinars per page." *Id*.

    b.     "Authors, teachers, the Institute for the Advancement of Education and Upbringing, and the Public Institute for Textbooks point out that the PDF format of the textbook is not a textbook, while only the Foundation claims the opposite." *Id.*

49.     On December 1, 2021, *Blic* published a fifth article about Plaintiffs titled: "Case of the allegedly free textbooks and the founder of the foundation ending up in court." *See Exhibit 14.* It made the following false statements:

    a.     "He advertises himself as offering free textbooks, but in fact, he is giving nothing to anyone for free. He claims to be a humanitarian who donates books, but when you go to the site to get a textbook, he actually leads you to a situation where schools need to order textbooks from only one publisher, not the ones they've already ordered from. Kavcic actually only promotes one publisher. When parents want to order books, they end up paying the price of that textbook. The digital textbooks he provides as free

are not approved by the Institute for Advancement of Education, and you cannot use textbooks that are not approved, Mijatovic said." *Id*.

### *Nedeljnik (Weekly Journal)* **Publishes False and Defamatory Statements**

50.     Defendant *Nedeljnik* (Weekly Journal) published a defamatory article, "Interview Aljus Pertinac." *See Exhibit 15*.  It stated that the Plaintiffs are deceiving parents and school children by gifting textbooks that are not truly free and are of lesser value than the textbooks the parents should be purchasing instead. The defamatory statements directly state or imply that Plaintiffs are manipulating the public and that donating textbooks is just a "front" and their way of engaging in dirty politics.

51.     The article is about Plaintiffs, referred to Plaintiffs by name throughout, and was so understood by those who read the tabloid.

52.     The statements are extremely harmful to Plaintiffs, and were published with the intent of defaming Plaintiffs and keeping the textbook publishers cartel in business. Specifically, the following statements made in the article are false and injured the Plaintiffs' reputations:

a.     "The first thing that draws one's attention about the initiative launched by the Alek Kavcic Foundation is that it is a very skilled manipulation. Aleksandar Kavcic manipulatively combined two completely separate ideas—free textbooks and his textbooks." *See Exhibit 15*.

b.     "It's cheap populism with a xenophobic twist. The public is being manipulated on a populist basis. I believe that Kavcic opted for such an approach because he thought that these publishing companies were the easiest target. Whoever is able to knock such players out will find a lot of room for themselves and, so it seems, entirely different political goals." *Id*.

53. The statements published by Defendants are false because the Alek Kavcic Foundation never breached its contract with the Institute for Textbooks. This has been confirmed in writing by the Institute. That did not stop the tabloids from continuing to falsely accuse Plaintiffs of breaking the law.

54. The articles also falsely claim Alek Kavcic is interested in exploiting donations for political purposes. This false statement as made for the purpose of arousing and misleading the public. Additionally, the articles falsely report that there is a criminal investigation of Kavcic in the United States, and that Alek Kavcic paid 10 million euros to Carnegie Melon in order to obtain his appointment. Defendants' multiple defamatory statements harmed Alek Kavcic's reputation as a distinguished Professor and scientist. The statements undermine Alek Kavcic's future prospects of teaching in Texas and other parts of the United States.

55. Defendants also severely harmed Plaintiffs by falsely stating that textbooks the Plaintiffs had been gifting are useless and by implying that no teacher or school approves of them. These statements are harmful to Plaintiffs' reputation because they falsely portray the Alek Kavcic Foundation as a fraudulent, manipulative organization and Alek Kavcic as a con man, and a corrupt politician who evades taxes.

56. These articles constitute libel per se. They expose Plaintiffs to hatred, contempt, ridicule and undermine the charitable cause that Plaintiffs have worked hard to advance.

57. The articles are available and have been circulated in the United States, where many people are able to purchase and have purchased the newspapers containing the defamatory articles. Plaintiffs are based in Texas where the harm has primarily been felt given that both the Plaintiffs are resident in Austin, Texas.

58.     Tabloids are regularly sold in Chicago, Illinois, and available for subscription purchases by readers, including Austin based readers. Namely, Jaksa Djordjevic is an individual who resides in Austin, Texas, who has a monthly subscription to the tabloids that are distributed by a company called Imtex Press, Inc. which imports and distributes the tabloids to the Serbian and Ex-Yugoslavian community. *See Exhibit 16.* Mr. Djordjevic has communicated what he read to Alek Kavcic. Mr. Djordjevic has also heard of the articles being discussed by friends in Texas.

59.     Plaintiffs have suffered harm in Texas. Plaintiff Alek Kavcic Foundation does business in Texas and Plaintiff Alek Kavcic lives in Texas. Defendants have purposefully availed themselves of benefits of the American market, regularly receive revenues from copies sold throughout the United States and are aware that their circulation has been made available by Imtex Press, Inc.

60.     As a proximate result of the above-described multiple publications, Plaintiff Alek Kavcic has suffered loss of his reputation, endured shame, mortification, and injury to his feelings. Plaintiffs Alek Kavcic and Alek Kavcic Foundation have suffered money damages, incurred significant unnecessary costs of storing the textbooks in warehouses and have suffered loss of reputation and lost business opportunities. Alek Kavcic Foundation has spent approximately $3 million on its educational campaign, but its effectiveness has been thwarted by Defendant's bad acts.  Plaintiffs have spent approximately $1.5 million to respond to false allegations in the press, including approximately $300,000 in advertising in an attempt to make the Alek Kavcic Foundation's gift effective.

## CAUSE OF ACTION

61.     "Libel" is defined by Texas statute as "defamation expressed in written or other graphic form that tends to blacken the memory of the dead or attempts to injure a living person's

reputation and thereby expose the person to public hatred, contempt, or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury. Tex. Civ. Prac. & Rem. Code § 73.001.

62.     A statement is considered libel *per se* if it is so obviously harmful to the plaintiff and so no proof of the statement's injurious character is required to make it actionable.  A false statement is considered libel *per se* if (a) it falls within the Texas statute's definition of libel or (b) falls within one of the four categories of *per se* defamatory speech.

63.     Defendant's statements are libel *per se* because they concerned Plaintiffs' profession and calling.

64.     Defendants acted with malice because they knew or did not try to find out whether the defamatory statements they published were true. The falsity of the statements would easily have been determined had Defendants made any attempt at all to verify the truth of the statements in the articles. All the articles containing defamatory content are either unsigned, signed with initials only, or have marks such as numbers on the side or different font, which signifies that the content is an ad and was paid for by a third party.

65.     There can be no doubt that Defendants published the false, defamatory statements.

66.     There can be no question that the false statements contained in the articles involve Plaintiffs only and were matters of private concern.  A private issue does not become public simply because it attracts attention.

67.     Plaintiffs suffered injury and were damaged by Defendants' libelous statements.

68.     Even if the discrete facts presented by Defendants are literally or substantially true, they were published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way.

69.     Plaintiffs are entitled to presumed damages, actual damages, consequential damages, exemplary damages, pre- and post-judgment interest and court costs in the amount of at least $1.5 million.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that:

A.     The Court enter a judgment against Defendants in this matter for all past, present and future economic and noneconomic damages, including exemplary damages, pre-judgment and post-judgment interest as allowed by law, costs of court, cost of suit in the amount of at least $1.5 million;

B.     The Court order that Defendants, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be permanently enjoined from defaming Plaintiffs;

C.     The Court award such other relief as the Court may deem just and proper.

DATED: February 24, 2022    Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Ben Bernell*
     Ben Bernell (TX Bar No. 24059451)
     Ben.bernell@pillsburylaw.com
     401 Congress Avenue, Suite 1700
     Austin, TX 78701-3797
     Telephone: (512) 580-9616
     Facsimile: (512) 580-9601

     David Keyko (*pro hac vice forthcoming*)
     david.keyko@pillsburylaw.com
     31 West 52nd Street
     New York, NY 10019
     Telephone: (212) 858-1000
     Facsimile: (212) 858-1500

     Eric C. Rusnak (*pro hac vice forthcoming*)
     eric.rusnak@pillsburylaw.com
     1200 17th Street, NW
     Washington, DC 22036
     Telephone: (202) 663-8000
     Facsimile: (202) 663-8007

     *Counsel for Plaintiffs Alek Kavcic and The Alek Kavcic Foundation*